IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


| | |
|---|---|
| ESCO CORPORATION, an Oregon corporation, | Civ. No.10-788-AC |
| Plaintiff, | FINDINGS AND RECOMMENDATION |
| v. | |
| BRADKEN RESOURCES PTY LTD., an Australian company, | |
| Defendant. | |

_____

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff ESCO Corporation ("ESCO") has petitioned the court to confirm an arbitration

award (the "award") pursuant to Chapter II of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-

208, Pub. L. 91-368, 84 Stat. 692 (July 31, 1970), and the Convention on the Recognition and


1- FINDINGS AND RECOMMENDATION

Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, 330 U.N.T.S. 38 (the "Convention"). The award issued on June 11, 2010, from an arbitration in the International Chamber of Commerce ("ICC") International Court of Arbitration with case number 15486/VRO against Defendant Bradken Resources Pty Ltd. ("Bradken"). ESCO requests that the court enter judgment against Bradken certifying the award and requiring Bradken to comply with the award by paying ESCO $7,957,087.88 plus post-award interest.

Bradken moves to vacate more than $6 million of the award pursuant to Chapter I of the FAA, 9 U.S.C. § 10(a)(4). Bradken does not seek substantive review of the award's resolution of claims and defenses. Instead, Bradken challenges only the portion of the attorney fee award incurred in defense of Bradken's antitrust counterclaims. According to Bradken, the portion of the award granting attorney fees to a successful antitrust defendant violates public policy, or alternatively, is founded on manifest disregard of U.S. antitrust law on the part of the arbitrator. ESCO opposes Bradken's motion and has filed a separate motion for sanctions against Bradken in the form of pre- and post-judgment interest at a rate of nine percent, and attorney fees and costs incurred by ESCO in responding to Bradken's motion to vacate.

Because Bradken has not met its burden in proving grounds to vacate, the award should be confirmed and judgment entered against Bradken in the amount of $7,957,087.88. ESCO also should be awarded post-judgment interest at the federal rate, as determined by 28 U.S.C. § 1961, on any remaining balance from the date judgment is entered until paid in full. Finally, ESCO's request for post-award prejudgment interest and ESCO's motion for sanctions should be denied.

////

////

2- FINDINGS AND RECOMMENDATION

*Background*

I.    <u>The Parties</u>

ESCO is an Oregon corporation with principal place of business in Portland, Oregon.

Bradken is a proprietary limited company established under the laws of Australia with its principal

place of business in Mayfield West, New Wales, Australia.  Both companies design, manufacture,

market, and sell heavy equipment and cast components worldwide for use in the mining, mineral

processing, and construction industries.  The relationship between the parties is founded on over 50

years of licensing agreements between ESCO and Bradken's successors.

II.    <u>The 1999 Agreement</u>

In 1999, ESCO entered into an agreement (the "1999 agreement") with Smorgon Steel Group

Limited ("Smorgon") of Australia.  The 1999 agreement provided to Smorgon certain rights in

ESCO intellectual property, including an exclusive license to use specific ESCO patents, trademarks,

and know-how in the manufacture and sale of ESCO products within an assigned territory.

Following two subsequent novation agreements in 2001 and 2004, Bradken assumed the rights and

obligations of the 1999 agreement.  The 1999 agreement, as amended by the 2004 novation

agreement, included the following dispute resolution clause:

> (a)  All disputes arising in connection with this Agreement shall be finally settled
> under the Rules of Conciliation and Arbitration of the International Chamber of
> Commerce by one or more arbitrators appointed in accordance with the rules.  The
> place of arbitration shall be Portland, Oregon, United States of America.
> . . .
>
> (c)  This Agreement is governed by, and is to be construed in accordance with, the
> laws applicable in the State of Oregon, United States of America, without regard for
> its conflicts of law provisions, and each party irrevocably and unconditionally
> submits to the non-exclusive jurisdiction of the courts of the State of Oregon, United
> States of America.

3- FINDINGS AND RECOMMENDATION

(Decl. of Randolph C. Foster in Supp. of Pl.'s Pet. to Confirm Arbitral Award, July 12, 2010 ("July Foster Decl.") (CR #3) Ex. 11 at 9, ¶ 14.)[1]  The parties do not dispute that this clause governed the arbitration that is the subject of this action.

The 1999 agreement did not include a separate provision concerning the award of attorney fees or costs following arbitration of any dispute.  However, as the arbitration clause demonstrates, the parties did agree that "all disputes" were to be "finally settled under the Rules of Conciliation and Arbitration of the International Chamber of Commerce."   The Rules of the International Chamber of Commerce ("ICC Rules") include a provision, Article 31, directly addressing allocation of arbitration costs.  Article 31 of the ICC Rules states:

> 1
> The costs of the arbitration shall include the fees and expenses of the arbitrators and the ICC administrative expenses fixed by the Court, in accordance with the scale in force at the time of the commencement of the arbitral proceedings, as well as the fees and expenses of any experts appointed by the Arbitral Tribunal and the reasonable legal and other costs incurred by the parties for the arbitration.
>
> 2
> The Court may fix the fees of the arbitrators at a figure higher or lower than that which would result from the application of the relevant scale should this be deemed necessary due to the exceptional circumstances of the case. Decisions on costs other than those fixed by the Court may be taken by the Arbitral Tribunal at any time during the proceedings.
> 3
> The final Award shall fix the costs of the arbitration and decide which of the parties shall bear them or in what proportion they shall be borne by the parties.

(Suppl. Decl. of Randolph C. Foster, Sept. 30, 2010 ("Sept. Foster Decl.") (CR #64) Ex. 36 at 16.)

The parties do not dispute that they agreed to be subject to the ICC Rules, including Article 31, and

---

[1]The dispute resolution clause in the original 1999 agreement differed only in that part (c) read as follows:  "This Agreement shall be construed and interpreted in accordance with the laws of the State of Oregon, United States of America [without regard for its conflict of law provisions]." (July Foster Decl. Ex. 9 at 20, ¶ 24, Ex. 10 at 8, ¶ 13(h).)

4- FINDINGS AND RECOMMENDATION

that Article 31 gives the arbitrator the discretion to award some legal costs and attorney fees to the prevailing party in an arbitration.  (Transcript of October 18, 2010 Hearing ("Tr.") (CR #81) at 12.)

III.    The Dispute

On March 6, 2008, ESCO filed papers requesting arbitration against Bradken in the ICC International Court of Arbitration, and that the arbitration be carried out according to the ICC Rules as set forth in the 1999 agreement.  ESCO's request for arbitration asked for clarification of the 1999 agreement regarding several of Bradken's obligations under that agreement.  Specifically, ESCO alleged that the parties disagreed whether Bradken was obligated under the 1999 agreement to mark ESCO products with ESCO trademarks and whether Bradken was allowed to use field trials at customer sites to promote products that are similar to, or competitive with, ESCO products.  ESCO's request for relief consisted only of a declaration that Bradken was obliged to comply with the 1999 agreement as interpreted by the arbitrator with respect to the trademark and field trial issues.

In response to the request for arbitration, on June 16, 2008, Bradken denied ESCO's interpretation of Bradken's obligations under the 1999 agreement and filed counterclaims asserting that the 1999 agreement was invalid based on various antitrust and patent misuse grounds.  Bradken requested reformation of several sections of the 1999 agreement, and asked that it be awarded "all reasonable attorneys' fees and other costs of arbitration pursuant to the ICC Rules," and for "such further relief as the Tribunal considers appropriate."  (July Foster Decl. Ex. 3 at 35, ¶ 32.)   In ESCO's August 5, 2008 response, it sought additional relief and requested an award of "costs of arbitration, including attorney and expert fees, and [a declaration] that Bradken is responsible for all costs of arbitration, including administrative and Arbitrator fees and related expenses." (July Foster Decl. Ex. 4 at 18.)  In an August 27, 2008 response, Bradken denied ESCO's additional allegations

but did not comment on ESCO's request for attorney fees.

In accordance with the ICC Rules, the parties jointly nominated Gerald Ghikas to serve as the sole arbitrator in the matter. The parties also prepared and agreed to certain Terms of Reference ("TOR") for the arbitration. One purpose of the TOR is to provide a "summary of the parties' respective claims and of the relief sought by each party, with an indication to the extent possible of the amounts claimed or counterclaimed." (Sept. Foster Decl. Ex. 36 at 11; ICC Rules Art. 18(1)(c).) The parties agreed in the TOR that Oregon law was to govern interpretation of the 1999 agreement and U.S. antitrust law was to govern the counterclaims. (July Foster Decl. Ex. 6 at 35, ¶¶ 6.1-.2.) ESCO's request for costs of arbitration, including attorney and expert fees, appeared in the TOR. (July Foster Decl. Ex. 6 at 21, ¶ 5.59.13.) Likewise, Bradken's request that it be awarded all reasonable attorney fees and other costs of arbitration pursuant to the ICC Rules appeared in the TOR. (*Id.* at 31, ¶ 5.89(n).)

Bradken's summary of its claims and contentions did not include any of the arguments presented here in response to ESCO's fee request. Nor did the TOR mention that the arbitrator, when allocating costs, would have to separate fees according to contract and antitrust claims in the event ESCO prevailed. However, in the TOR, the arbitrator's list of issues to be determined in the arbitration did question whether ESCO's request for relief, including its request for fees, was "available as a matter of law" and whether either party's requests should be awarded. (*Id.* at 35, ¶ 6.1.16.) In addition, the arbitrator put at issue whether either party was "entitled by statute or otherwise to an award of its reasonable attorneys fees, expert fees, and costs in the matter." (*Id.* at 35, ¶ 6.1.19.) The TOR was signed by both parties as of November 6, 2008.

The arbitration hearing proceeded on January 25-29, 2010, and February 1-4, 2010. After

6- FINDINGS AND RECOMMENDATION

the hearings, the parties each filed several post-hearing documents, including responses to the Arbitrator's List of Issues.  The list was provided to the parties on February 9, 2010, and its purpose was to ensure that the arbitrator "identified all claims presented."  (Sept. Foster Decl. Ex. 22 at 1.) The arbitrator's list of issues included  several questions related to the parties' requests for relief and the appropriate remedies under U.S. antitrust laws.

Both the parties filed responses to the list of issues on March 4, 2010, followed by joint filings of replies to the responses on March 15, 2010.  In the parties' responses, they expressly agreed that antitrust damages, if awarded to Bradken, would be trebled.  Bradken did not discuss whether U.S. antitrust laws affected the scope of remedies available to ESCO, or whether the arbitrator must separate fees on the contract claims from fees on the antitrust claims in its response or reply.

On April 29, 2010, the arbitrator asked the parties to submit documents detailing each party's requests for legal fees and costs.  The arbitrator instructed the parties that they could have an opportunity to comment on each other's cost claims if the parties wanted to do so and the parties could agree on a process for so doing.  (Decl. of Peter C. Chen in Supp. of Bradken's Mot. to Vacate in Part Arbitration Award ("Sept. Chen Decl.") (CR #31) Ex. 6 at 1.)  In ESCO's statement of fees and costs submitted on May 3, 2010, it indicated that "[l]ess than US $1 million of the fees and costs incurred [by ESCO] resulted from ESCO's affirmative claims."  (*Id.* Ex. 1 at 11, ¶ 25.)  The remainder of the fees incurred by ESCO presumably were expended in defense of Bradken's antitrust counterclaims.  In its statement, ESCO sought an award of $8,822,882.42, which amount represented entirety of the legal costs incurred by ESCO plus its procedural costs.  (Sept. Foster Decl. Ex. 27 at 5; July Foster Decl. Ex. 12 at 140, ¶¶ 364-65.)  Bradken received an electronic copy of ESCO's statement on May 3, 2010.  Bradken also submitted a statement of costs on May 3, 2010, indicating

7- FINDINGS AND RECOMMENDATION

that it had incurred legals costs in the sum of $8,620,458.65.  (Sept. Chen Decl. Ex. 7 at 4-5.)

On the morning of May 4, 2010, ESCO emailed the arbitrator informing him that ESCO did not require an opportunity to comment on Bradken's statement of costs.  (Sept. Foster Decl. Ex. 28 at 1-2).  Eight minutes later, Bradken informed the arbitrator that it, "likewise, does not wish to comment on ESCO's statement of costs."  (Sept. Foster Decl. Ex. 28 at 1)

IV.    Arbitration Award and Post-Award Proceedings

Five weeks later, the arbitrator issued the final award on June 11, 2010.  The parties received the award on June 17, 2010.  The 140-page award provided the conclusions of the arbitrator as well as a summary of the procedural history, factual background, claims and issues of the arbitration. Included in the description of the claims were each party's requests that all costs of arbitration be awarded in its own favor.  The majority of the award detailed the analysis from which the arbitrator arrived at his conclusions, and approximately half of that analysis was devoted to Bradken's antitrust counterclaims.  In sum, the arbitrator denied Bradken's claims that the 1999 agreement violated U.S. antitrust laws, largely accepted ESCO's contractual interpretations regarding the trademark and field trial issues, and rejected ESCO's request for early termination the 1999 agreement.

With regard to costs, the arbitrator stated that he had discretionary authority pursuant to Article 31 of the ICC Rules to decide who shall bear procedural and legal costs and in what proportion.   The arbitrator declared ESCO to be the "substantially successful" party in the proceeding and required Bradken to pay 90 percent of ESCO's arbitration costs.  (July Foster Decl. Ex. 12 at 140, ¶ 363.)  Concerning the cost allocation, the arbitrator observed  that a "very complex" case arose out of a "relatively[] benign" complaint when Bradken filed its counterclaims asserting over $600 million in damages.  (*Id.* at 139, ¶¶ 360-61.)  In total, the award ordered Bradken to pay

ESCO's legal costs in the amount of $7,747,087.88 and ESCO's share of procedural costs in the amount of $210,000. (*Id.* at 140, ¶¶ 364-65.)

Two weeks later, on June 25, 2010, Bradken sent ESCO a letter acknowledging what it viewed as several major conclusions of the award, including its obligation to pay ESCO $7,957,087.88. Bradken expressed a desire to resolve all outstanding matters as well as to expedite the resolution. The letter also indicated Bradken's intent to pay the award in its entirety by July 31, 2010. On July 2, 2010, Bradken sent a second letter to ESCO reiterating its intent to pay the award and specifying the means by which it intended to carry out payment. In this second letter, Bradken specified that "by making this payment, Bradken does not waive any of its rights to clarify, challenge, vacate, or modify the terms of the Award under any applicable procedure or law." (Sept. Foster Decl. Ex. 30.)

In a letter dated July 7, 2010, ESCO acknowledged Bradken's intention to pay the award by July 31, 2010, and that, by making its payment, Bradken did not waive any rights. ESCO also indicated that the amount of the award became due as of June 17, 2010, the date Bradken received the award, and informed Bradken that interest had been accruing since that date at a rate of nine percent in accordance with Oregon law. On July 8, 2010, ESCO filed in this court a petition seeking confirmation of the entire award plus post-award interest pursuant to 9 U.S.C. § 207.

On July 19, 2010, Bradken requested clarification of the award from the arbitrator, pursuant to Article 29 of the ICC Rules. Bradken asked the arbitrator to specify what portion of the legal costs awarded to ESCO had been incurred by ESCO in defense of Bradken's antitrust counterclaims. In its request, Bradken stated that an award of fees attributable to successful defense against antitrust claims was not permitted under U.S. antitrust law.

9- FINDINGS AND RECOMMENDATION

In a decision dated August 26, 2010, the arbitrator rejected Bradken's request for clarification as outside the scope of Article 29.[2]  The arbitrator concluded that Bradken's request could not be entertained as a "correction" since the award was an accurate portrayal of his intentions; there were no clerical, computation, or typographical errors.  The arbitrator also concluded that during the arbitration, Bradken never argued or presented a defense that ESCO was not entitled to costs incurred in defending against Bradken's antitrust claims based on U.S. antitrust law.  Thus, the arbitrator concluded that Bradken's request was not an "interpretation" because it would require him to review and weigh evidence, decide a matter that was never argued or considered, and make new findings of fact, which would undermine the finality of the award.

Following the arbitrator's rejection of its request for clarification, on September 10, 2010, Bradken filed in this court a motion to partially vacate the award pursuant to 9 U.S.C. § 10(a)(4).  In its motion, Bradken challenges only the attorney fee award, claiming that the award violates U.S. antitrust law and public policy because it grants attorney fees to a successful antitrust defendant.  Bradken also claims that the arbitrator manifestly disregarded the U.S. antitrust law in awarding these fees to ESCO.  Bradken also seeks an accounting of ESCO's attorney fees and expenses so that the court can segregate the fees attributable to ESCO's defense of the antitrust counterclaims from those related to the contract claims.  Bradken moves to vacate the award only to the extent that it includes fees incurred in connection with the antitrust claims.

////

---

[2]A request for clarification is only appropriate for "correction" or "interpretation" of the award.  (Sept. Foster Decl. Ex. 36 at 16; ICC Rules, Art. 29.)  "Correction" is limited to "clerical, computation or typographical error," and "interpretation" involves resolution of ambiguities or uncertainties in the intended meaning of the award.  (Sept. Chen Decl. Ex. 3 at 6.)

10- FINDINGS AND RECOMMENDATION

*Applicability of the FAA*

I.    The Court's Jurisdiction

The parties do not dispute that enforcement of the award falls under the Convention.  Federal courts have original jurisdiction over such actions "falling under the Convention."  9 U.S.C. § 203; *Ministry of Defense of the Islamic Republic of Iran v. Gould Inc.*, 887 F.2d 1357, 1362 (9th Cir. 1989), *cert. denied*, 494 U.S. 1016 (1990).  An arbitral award falls under the Convention if:  (1) the award arises out of a legal relationship, (2) which is commercial in nature, and (3) is not entirely domestic in scope.  *Gould,* 887 F.2d at 1362.  An award is non-domestic when it involves a party who has its principal place of business or is domiciled outside the United States.  9 U.S.C. § 202; *Gould*, 887 F.2d at 1362 (finding "the award is obviously not domestic in nature because Iran is one of the parties to the agreement"); *Jacada (Europe), Ltd. v. International Marketing Strategies, Inc.*, 401 F.3d 701, 708-709 (6th Cir.), *cert. denied*, 546 U.S. 1031 (2005)(finding award was not domestic because Jacada was incorporated in the United Kingdom), *abrogated on other grounds by Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008); *Industrial Risk Ins. v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1441 (11th Cir. 1998), *cert. denied*, 525 U.S. 1068 (1999)(finding award non-domestic because one party was a German corporation).

The instant action clearly falls under the Convention.  The parties' 1999 agreement is a legal relationship that is commercial in nature because it involves the licensing of ESCO's patents, trademarks and know-how for use by Bradken.  Also, the parties' legal relationship is not entirely domestic – Bradken is an Australian company, and the 1999 agreement contemplated the distribution of products in Australia and other foreign countries.  *Gould,* 887 F.2d at 1362.  Thus, the court has

11- FINDINGS AND RECOMMENDATION

jurisdiction.[3]

II.    Standard of Review

ESCO asserts that because the award falls under the Convention, the court's review is governed exclusively under the Convention. *See* 9 U.S.C. § 207. According to ESCO, the court is required to confirm the award unless Bradken satisfies one of seven narrowly construed defenses listed in the Convention. Moreover, ESCO contends that because Bradken's assertion of manifest disregard as a ground for vacating the award has not been incorporated into the Convention as a defense, the court should not consider it.

In response, Bradken argues that the court also may review the award under the standards set forth under Chapter I of the FAA, 9 U.S.C. § 9-11. Bradken suggests that because the arbitration award was rendered in the United States and is being reviewed by a U.S. court, the court is free to set aside or modify the award under Chapter I of the FAA, in addition to those reasons afforded by the Convention, citing *Yusef Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc. ("Toys R Us")*, 126 F.3d 15, 21 (2d Cir. 1997), *cert. denied*, 522 U.S. 1111 (1998).

It is clear that because the award falls under the Convention, the court's review of the award is governed by Chapter II of the FAA. *LaPine v. Kyocera Corp.*, No. C 07-06132 MHP, 2008 WL 2168914, *4 (N.D. Cal. May 23, 2008). Under Article V(1) of the Convention, the grounds for refusing to confirm an award are:

> (a) The parties to the agreement . . . were . . . under some incapacity, or the said agreement is not valid under the law . . . ; or
>
> (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise

---

[3]The parties agree that venue is proper under 9 U.S.C. § 204.

unable to present his case; or

(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration . . . , or

(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties . . . ; or

(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

Article V(2) of the Convention provides two additional grounds for refusing to confirm an award:

(a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or

(b) The recognition or enforcement of the award would be contrary to the public policy of that country.   21 U.S.T. 2517.

Under the Convention, a court has little discretion when reviewing arbitration awards:  "The court shall confirm the award unless it finds one of the grounds for refusal . . . of the award specified in the said Convention."  9 U.S.C. § 207; *Polimaster Ltd. v. RAE Systems, Inc.,* 623, F.3d 832, 835-36 (9th Cir. 2010); *Ministry of Defense of the Islamic Republic of Iran v. Gould, Inc. (Gould II)*, 969 F.2d 764, 770 (9th Cir. 1992); *China Nat'l Metal Prods. Import/Export Co. v. Apex Digital, Inc.,* 379 F.3d 796, 799-800 (9th Cir. 2004).  Thus, if an asserted defense does not fall within Article V(1) or (2), the court has no discretion to refuse to confirm the award.  9 U.S.C. § 207.  The court narrowly construes the defenses to enforcement.  *Polimaster,* 623 F.3d at 836; *Gould (I),* 887 F.2d at 1364 n.1.

However, whether a party may assert the "domestic" grounds for vacating an arbitral award in Chapter I of the FAA in addition to the those under Article V of the Convention has not been determined by the Ninth Circuit.  *Kaliroy Produce Co. v. Pacific Tomato Growers, Inc.,* Civ. No.

13- FINDINGS AND RECOMMENDATION

10-160-TUC-CJK, 2010 WL 3081324, *5-6 (D. Ariz. Aug. 4, 2010); *LaPine,* 2008 WL 2168914, at *4. Numerous other courts that have addressed this question have found that the Convention and the FAA provide overlapping coverage and that a party may also assert the defenses available under § 10(a) of Chapter I. *Toys R Us*, 126 F.3d at 21; *accord Jacada,* 401 F.3d at 709; *Ario v. Underwriting Members of Syndicate 53 at Lloyds*, 618 F.3d 277, 292 (3d Cir. 2010); *Lander Co. v. MMP Investments, Inc.*, 107 F.3d 478, 481 (7th Cir.), *cert. denied*, 552 U.S. 881 (1997); *Gulf Petro Trading Co. v. Nigerian Nat'l Petroleum Corp.*, 512 F.3d 742, 746 (5th Cir. 2008); *Termorio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 936 (D.C. Cir.), *cert. denied*, 552 U.S. 1038 (2007).

For example, in *Toys R Us*, the Second Circuit noted that the Convention "mandates very different regimes for review of arbitral awards "(1) in the state in which, or under the law of which the award was made, and (2) in other states where recognition and enforcement are sought." *Toys R Us*, 126 F.3d at 23. The *Toys R Us* court reasoned that because Article V(1)(e) "allow[s] a court in the country under whose law the arbitration was conducted to apply domestic arbitral law," the defenses under Chapter I of the FAA are available where the award is rendered in the United States and confirmation is sought in the United States. *Id.* at 23.

ESCO argues that *Toys R Us* should not apply, relying instead upon *Woodchem Eur., S.A. v. D.B. Western, Inc.*, No. 01-132-HO, 2001 U.S. Dist. LEXIS 25290 (D. Or. Nov. 2, 2001)(declining to review a non-domestic award made in New York under Oregon law for manifest disregard). The court is not persuaded that *Woodchem* should govern the analysis of this issue. *Woodchem* was decided prior to *Toys R Us*, and since that time, several other Circuit Courts of Appeal have adopted the *Toys R Us* rationale. *Ario*, 618 F.3d at 290-92; *Jacada,* 401 F.3d at 709; *Gulf Petro Trading,* 512 F.3d at 746; *Termorio,* 487 F.3d at 936. Additionally, two other district

14- FINDINGS AND RECOMMENDATION

courts in this circuit have followed *Toys R Us* when addressing this issue. *LaPine*, 2008 WL 2168914, at *6 ("In the absence of further guidance from the Ninth Circuit, the court concludes that the appropriate standard of review is under both Article V and 9 U.S.C. section 10."); *Kaliroy*, 2010 WL 3081324, at *2 ("Because the Convention does permit courts of the forum country to set aside a non-domestic award based on a forum state's arbitral law and the Ninth Circuit has not yet addressed this issue, the Court finds the Convention's remedies are not exclusive.") Because of the greater weight of contrary and well-reasoned authority since *Woodchem* was decided, the court concludes that *Toys R Us* represents the better rule on this point. Accordingly, in the absence of additional direction from the Ninth Circuit, the court concludes that Bradken may assert the grounds for vacating the award in Chapter I of FAA and the defenses in the Convention, and the appropriate standard of review is under both 9 U.S.C. § 10(a) and the Convention. *LaPine*, 2010 WL 2168914, at *6; *Kaliroy*, 2010 WL 3081324, at *5.

Under what some courts have termed the "domestic" portion of the FAA, a court may vacate an arbitration award in four circumstances:

(1) Where the award was procured by corruption, fraud, or undue means.

(2) Where there was evident partiality or corruption in the arbitrators . . . .

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

15- FINDINGS AND RECOMMENDATION

The court's review of an arbitration award under the FAA is "highly deferential." *Comedy Club Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1293 (9th Cir.), *cert. denied*, 130 S. Ct. 145 (2009); *G.C. & K.B Invs., Inc. v. Wilson*, 326 F.3d 1096, 1105 (9th Cir. 2003). Unless the award is vacated as provided in § 10(a), "'confirmation is required even in the face of erroneous findings of fact or misinterpretations of law.'" *Lagstein v. Certain Underwriters at Lloyds, London*, 607 F.3d 634, 640 (9th Cir.), *cert. denied*, 131 S. Ct. 832 (2010)(quoting *Kyocera Corp. v. Prudential-Bache Trade Servs. Inc.*, 341 F.3d 987, 997 (9th Cir. 2003)(en banc), *cert. dismissed*, 540 U.S. 1098 (2004)).

In any event, the court's resolution of whether the defenses under Chapter I of the FAA are available in addition to those under the Convention is not critical to the outcome here. As discussed below, Bradken's public policy and manifest disregard arguments fail on their merits, and alternatively, have been waived by Bradken's failure to timely present its arguments to the arbitrator.

III.    The Award Does Not Violate Public Policy

Bradken appears to assert its public policy argument pursuant to Chapter I of the FAA, 9 U.S.C. § 10(a). ESCO correctly observes that Article V(2)(b) provides for a public policy defense to confirmation.[4] Under Article V(2)(b), the public policy defense is narrowly construed, and applies only to those circumstances where enforcement of the award would violate basic notions of morality and justice. *Kaliroy*, 2010 WL 3081324, at *5; *Telnor Mobile Communications AS v. Storm LLC*,

---

[4]It is unclear whether a public policy defense is available under Chapter I of the FAA in light of *Hall Street Assocs., L.L.C. v. Mattel, Inc.,* in which the Supreme Court determined that § 10(a) lists the exclusive grounds for vacating an arbitration award. 552 U.S. 576, 584 (2008). *Compare Comedy Club*, 553 F.3d at 1290 (concluding that manifest disregard ground for vacatur survived *Hall Street Assocs.* because it is "shorthand" for § 10(a)(4)) *with Frazier v. CitiFinancial Corp.,* 604 F.3d 1313, 1323-24 (11th Cir. 2010)(finding judicially created bases for vacatur, including public policy, were no longer available defenses after *Hall Street Assocs.*). Again, resolution of this issue is not critical to this decision because Bradken has failed to meet its burden under either the Convention or the FAA.

16- FINDINGS AND RECOMMENDATION

584 F.3d 396, 411 (2d Cir. 2009). Whether examined under the Convention or the FAA, the parties appear to generally agree that a court may vacate an award that is contrary to public policy. *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc. (Misco)*, 484 U.S. 29, 43 (1987); *Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173*, 886 F.2d 1200, 1210 (9th Cir. 1989), *cert. denied*, 495 U.S. 946 (1990). And, the parties agree that the court's refusal to enforce an arbitrator's interpretation "is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of proposed public interest." *Misco*, 484 U.S. at 43 (internal citations and quotations omitted); *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766 (1983). Therefore, this court's task is to determine whether the relief ordered by the arbitrator would conflict with other laws and legal precedents and clearly violate an identifiable public policy. *Misco*, 484 U.S. at 43; *Stead Motors*, 886 F.2d at 1212-13. The party seeking to vacate the award bears the burden of demonstrating that the award violates an explicit, well-defined, and dominant public policy. *Gould II*, 969 F.2d at 770.

Bradken asserts that the court must vacate the award of some $6 million in attorney fees to ESCO for successfully defeating Bradken's antitrust counterclaims. Bradken argues that the award of attorney fees runs contrary to an explicit, well-defined, and dominant public policy embodied in Section 4 of the Clayton Act, codified at 15 U.S.C. § 15(a). Bradken argues that § 15(a), which provides for treble damages and attorney fees, is available only to successful plaintiffs pursuing enforcement of antitrust laws. Bradken reasons that because it is well-established that attorney fees may not be awarded to parties who successfully defend against antitrust claims, the arbitrator's award of attorney fees to ESCO violates this explicit, dominant public policy. The court disagrees.

17- FINDINGS AND RECOMMENDATION

Bradken correctly identifies that attorney fees are authorized under the statute only to prevailing plaintiffs in antitrust actions. 15 U.S.C. § 15(a) ("[A]ny person who shall be injured in his business . . . by reason of anything forbidden in the antitrust laws . . . shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."). And, as Bradken notes, it also is true that courts generally have not awarded attorney fees to prevailing defendants in antitrust actions litigated in court. *See, e.g., Azizian v. Federated Department Stores, Inc.,* 499 F.3d 950, 959-60 (9th Cir. 2008)(citing *Byram Concretanks, Inc. v. Warren Concrete Prods. Co. of New Jersey*, 374 F.2d 649, 651 (3d Cir. 1967)); *Juneau Square Corp. v. First Wisconsin Nat. Bank of Milwaukee*, 435 F. Supp. 1307, 1327 (D.C. Wis. 1977), *aff'd*, 624 F.2d 798 (1980). But these authorities do not compel the analytical leap Bradken urges this court to perform.

First, while the statute expressly provides for a right to attorney fees to a prevailing antitrust plaintiff, it contains no similarly express prohibition on awarding fees to a prevailing defendant in an antitrust action. In fact, there is no express statutory right, contrary to Bradken's contention, insulating an unsuccessful antitrust plaintiff from liability for attorney fees to a successful defendant; instead, court decisions have created this principle. This is a substantive distinction in evaluating Bradken's argument that public policy prohibits enforcement of an agreement that would require waiver or relinquishment of a *statutory* right, and courts have recognized this distinction by creating exceptions to it. For example, a prevailing antitrust defendant may recover fees where the plaintiff has pursued a frivolous antitrust claim. *See King v. Idaho Funeral Serv. Ass'n*, 862 F.2d 744, 748 (9th Cir. 1988)(awarding fees pursuant to Rule 11). Thus, the public policy that Bradken contends must dominate here is not, in fact, an inexorable right expressly articulated in the statute.

Second, the case decisions Bradken cites for its dominant public policy contention arose from

18- FINDINGS AND RECOMMENDATION

antitrust lawsuits in court and do not involve or discuss attorney fee awards in an international commercial arbitration context, and thus are not directly on point. *See, e.g., Azizian*, 499 F.3d at 959-60; *Byram Concretetanks*, 374 F.2d at 651. Indeed, Bradken has not cited any case which prohibits an award of attorneys fees to a successful antitrust defendant where such an award has been authorized by an arbitration agreement in similar circumstances, and this court has found none. Significantly, Bradken admits that the public policy issue its position here raises – whether the public policy underlying courts' general prohibition on imposing attorney fee awards on antitrust plaintiffs dominates the public policy underlying courts' recognition and enforcement of international commercial arbitration awards – is one of first impression. (Bradken's Opp. to Motion to Sanctions, (CR #76) at 6.) This absence of authority refutes Bradken's claim of public policy that is explicit, well-defined, and dominant.

As ESCO correctly argues, there is a competing public policy in favor of enforcing arbitration agreements. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985). This strong federal policy favoring arbitration "*applies with special force* in the field of international commerce." *Id.* at 631 (emphasis added). *See also Rogers v. Royal Caribbean Cruise Line,* 547 F.3d 1148, 1158-59 (9th Cir. 2008), *cert. denied,* 129 S. Ct. 2827 (2009)(rejecting argument that public policy favoring judicial resolution of seafarers' wage claims would overcome public policy in favor of international arbitration); *Balen v. Holland America Line Inc.*, 583 F.3d 647, 654 (9th Cir. 2009)(same). Also important to the current discussion is the long-standing rule that parties may agree to submit antitrust claims to binding international arbitration without violating public policy. *Mitsubishi Motors*, 473 U.S. at 635-40.

Additionally, courts have recognized that parties may agree in an arbitration to something

19- FINDINGS AND RECOMMENDATION

that a statute would otherwise prohibit. For example, in *Allen v. RBC Dain Rauscher, Inc.*, Case No. C06-5163-RJB, 2006 WL 1303119, *8-9 (W.D. Wash. May 9, 2006), a state statute permitted a successful purchaser of a security to recover attorney fees and costs, but there was no reciprocal provision allowing for a brokerage firm to recover attorney fees when successfully defending against such a claim. *Id.* at *8. Following arbitration of the parties' dispute, the arbitrator awarded attorney fees to the successfully defending broker. The *Allen* court concluded that the arbitration panel had the authority to award attorney fees pursuant to the NASD Code of Arbitration Procedure § 10330. *Id.* at *9. *See also Prudential-Bache Sec., Inc., v. Tanner,* 72 F.3d 234, 242-43 (1st Cir. 1995)(confirming award of attorney fees where parties agreed to be bound by New York Stock Exchange arbitration rules which allowed for an award of fees).

The Supreme Court reached a similar outcome in *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 60-61 (1995). In *Mastrobuono*, the court rejected an argument by Shearson Lehman that the parties' choice of law provision in the contract evidenced an intent to exclude punitive damages which were prohibited under state law. After examining the parties' arbitration agreement, the court found that the agreement itself did not expressly preclude punitive damage awards. Additionally, the *Mastroubuono* court determined that the NASD rules by which the parties agreed to be bound, contemplated an award of punitive damages. *Id.* at 60-61. Therefore, under the broad policy favoring enforcement of arbitration awards, the *Mastrobuono* court enforced the arbitral award of punitive damages as within the scope of the contract. *Id.* at 64; *see also PaineWebber Inc., v. Bybyk*, 81 F.3d 1193, 1202 (2d Cir. 1996)(determining that the issue of attorney fees was properly decided by the arbitrator, despite a New York statute which prohibited the submission of attorney fees to an arbitrator unless expressly provided).

20- FINDINGS AND RECOMMENDATION

Here, Bradken does not dispute that Article 31 provides the arbitrator the authority to award attorneys fees and costs. As Bradken concedes, ESCO is entitled to fees on its other arbitration claims. Instead, Bradken submits that the public policy preventing an award of attorney fees to successful antitrust defendants is so integral to the antitrust enforcement scheme, it prohibits an arbitrator from awarding such fees, *despite* Bradken's prior agreement that the arbitrator would have the authority to award fees. Bradken asserts that the antitrust public policy is so strong that parties may not "contract around" the one-way fee-shifting provided in § 15(a) citing *Deutscher Tennis Bund v. ATP Tour, Inc.*, Civ. No. 07-178, 2009 WL 3367041, *3-4 (D. Del. Oct. 19, 2009).

The court finds *Deutscher* readily distinguishable. In *Deutscher Tennis Bund*, following the conclusion of a ten day jury trial on Sherman Act antitrust claims, the successful defendant, ATP Tour, Inc. ("ATP"), sought an award of attorney fees under Fed. R. Civ. Pro. 54(d). There, ATP relied upon a section of its corporate bylaws which provided for an award of attorney fees in the event that ATP prevailed in a suit brought by one of its members. *Id.* at *1. ATP argued that the bylaws were binding on its members, including plaintiff Deutscher Tennis Bund. Rejecting ATP's argument, the *Deutshcer* court concluded that "ATP cites no case in which a court held that a board-adopted corporate bylaw can form the basis for the recovery of attorney's fees from members who sue the corporation[.]" *Id.* at *3.

Although, as Bradken asserts, the *Deutscher* court commented that an award of attorney fees to a successful defendant in antitrust would be contrary to the policies underlying federal antitrust laws, the court's holding turned instead on the corporate bylaw, which the ATP board unilaterally adopted in direct response to the pending litigation. *Id.* at *4 n.4. And, the court finds *Deutscher* further inapposite because it involved an action litigated in court followed by a request for fees,

unlike the instant case involving an arbitration agreement negotiated by the parties in advance of the dispute.  Therefore, *Deutscher* does not aid the court's resolution of the current dispute.

The court concludes that the public policy favoring enforcement of arbitration awards must prevail in this case.  There is an absence of an identifiable, explicit public policy prohibiting that would prohibit an award of attorney fees to ESCO under the circumstances of the current case.  In contrast, there is clearly established countervailing public policy favoring enforcement of arbitration agreements, a public policy which the Supreme Court has stated "applies with special force in the field of international commerce."  *Mitsubishi*, 473 U.S. at 631.  Added to this is the equally clear policy requiring limited judicial review of arbitral awards.  *See, e.g., Mitsubishi*, 473 U.S. at 625 (finding that, at bottom, the FAA is a "policy guaranteeing the enforcement of private contractual arrangements").  By agreeing to arbitrate their disputes, the parties here agreed to "trade[] the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration."  *Id.* at 628.  Yet, with that agreement is an inherent risk:  "The risk that arbitrators may construe the governing law imperfectly in the course of delivering a decision that attempts in good faith to interpret the relevant law, or may make errors with respect to the evidence on which they base their rulings, is a risk that every party to arbitration assumes, and such legal and factual errors lie far outside the category of conduct embraced by § 10(a)(4)."  *Kyocera Corp. v. Prudential-Bache T. Servs. Inc.*, 341 F.3d 987, 1003 (9th Cir. 2003)(en banc), *cert. dismissed*, 540 U.S. 1098 (2004).  Bradken should be held to its agreement.

In summary, Bradken has failed to establish that a dominant, well-defined, explicit public policy exists which prevents an award of attorney fees to ESCO here.  Bradken has not cited any binding precedent prohibiting an award of attorneys fees in similar circumstances and admits the

22- FINDINGS AND RECOMMENDATION

issue is one of first impression.  The cases upon which Bradken relies invalidating awards of attorney

fees to successful antitrust defendants do not involve an arbitration agreement such as the one at

issue in this case or facts comparable to those here, which include an arms' length negotiation

between two sophisticated business entities.  Lastly, the parties agreed to arbitrate their antitrust

claims and the issue of attorneys fees.  Because Bradken has not satisfied its burden for vacating the

arbitration award under either the Convention or § 10(a)(4), Bradken's motion to vacate the

arbitration award on public policy grounds should be denied.

IV.    The Award is Not in Manifest Disregard of the Law

Section 10(a)(4) of the FAA permits vacatur of an arbitral award "where the arbitrators

exceeded their power."  9 U.S.C. § 10(a)(4); *Comedy Club,* 553 F.3d at 1290.  This is a high

standard; it is not sufficient "to show that the panel committed an error – or even a serious error."

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1767 (2010); *Lagstein,* 607 F.3d at

641.  "Arbitrators exceed their powers in this regard not when they merely interpret or apply the

governing law incorrectly, but when the award is completely irrational, or exhibits a manifest

disregard of the law."  *Kyocera*, 341 F.3d at 997 (internal quotations and citations omitted);

*Lagstein*, 607 F.3d at 641.  To vacate an arbitration award on this ground, "it must be clear from the

record that the arbitrators recognized the applicable law and then ignored it."  *Michigan Mut. Ins.

Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir. 1995); *Comedy Club*, 553 F.3d at 1293.

Furthermore, to rise to the level of manifest disregard, "'[t]he governing law alleged to have been

ignored by the arbitrators must be well defined, explicit, and clearly applicable.'"  *Collins v. D.R.

Horton, Inc.*, 505 F.3d 874, 879-80 (9th Cir. 2007)(quoting *Carter v. Health Net of California, Inc.*,

374 F.3d 830, 838 (9th Cir. 2004)(alteration in original)).

Bradken argues that the arbitrator's decision awarding attorney fees to ESCO on the antitrust claims is contrary to well-established antitrust law for two primary reasons:  (1) the arbitrator was aware that ESCO is not entitled to attorney fees for successfully defending the antitrust claims; and (2) Bradken could not have been expected to address attorney fees prior to issuance of the final award and thus did not have an adequate opportunity to present its challenge to the attorney fee award during the arbitration process.  These arguments lack force on the record of this case.

First, the court notes that the legal principle Bradken now propounds as obvious – that successful antitrust defendants cannot be awarded attorneys fees – is not found in the text of § 15(a). The statute addresses only a successful *plaintiff's* right to trebled damages and attorney fees; the statute is silent as to fee awards to successful defendants.  It may be true that courts have ruled that successful defendants generally are not entitled to fees in antitrust actions litigated in the courts, but as the previous public policy discussion shows, U.S. antitrust law is far from clear that a party may not voluntarily forego that right in an international commercial arbitration agreement negotiated at arm's length.  In short, there is no binding precedent prohibiting an award of attorney fees to a successful antitrust defendant in the context of an international commercial arbitration agreement which specifically empowers an arbitrator to award such fees.  Accordingly, the court concludes that Bradken has not established that the governing law alleged to have been ignored is well-defined, explicit, or clearly applicable as required to demonstrate manifest disregard.  *Compare Collins*, 505 F.3d at 880, 884 (determining that question before the arbitrator was one of first impression and rejecting manifest disregard claim; arbitration award confirmed); *with Comedy Club*, 553 F.3d at 1292 (finding manifest disregard where controlling legal principle concerning covenants not to compete was "settled" and "well-established").

24- FINDINGS AND RECOMMENDATION

Second, Bradken provides no persuasive evidence that the arbitrator was aware of and intentionally disregarded the law.  In an arbitration, the parties are responsible for ensuring that the relevant law is discussed in the record.  *See Comedy Club*, 553 F.3d at 1292-93 (finding that controlling legal principles were "expressly" before the arbitrator).  As the Second Circuit has aptly observed:

> In determining an arbitrator's awareness of the law, we impute only knowledge of governing law identified by the parties to the arbitration.  Absent this, we will infer knowledge and intentionality on the part of the arbitrator only if we find an error that is so obvious that it would be *instantly* perceived as such by the average person qualified to serve as an arbitrator.  We undertake such a lenient subjective inquiry in recognition of the reality that arbitrators often are chosen for reasons other than their knowledge of applicable law, and that it is often more important to the parties to have trustworthy arbitrators with expertise regarding the commercial aspects of the dispute before them.

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 390 (2d Cir. 2003) (citations omitted).  *Accord DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 822-23 (2d Cir. 1997), *cert. denied*, 522 U.S. 1049 (1998)(rejecting argument that controlling principle so obvious that arbitrator must have ignored it, where there was no evidence in arbitration record that party presented specific argument to arbitrator to show arbitrator "actually knew" of principle).

Bradken contends that the arbitrator was aware of its statutory entitlement to treble damages and attorney fees, as evidenced by the arbitrator's multiple references to § 15(a) in the award, the arbitrator's lengthy discussion concerning Bradken's damages claims, and its citation to *Mitsubishi*. Bradken clearly indicated in its Statement of Legal Issues that 15 U.S.C. § 15(a) was to be applied when assessing the antitrust and patent misuse counterclaims, and it is clear from the record that the arbitrator understood that damages were to be trebled under the statute if Bradken prevailed.  (July Foster Decl. Ex. 12, p. 76, 97-99, 102-103.)  However, the record also reveals that § 15(a) was never

25- FINDINGS AND RECOMMENDATION

discussed in the context of ESCO's entitlement to fees.  More to the point, Bradken did not assert

in any of its multiple submissions to the arbitrator that ESCO was prohibited from an award of

attorneys fees on the antitrust claims under *Azizian*, or any other case law interpreting § 15(a), as

authorizing only one-way fee shifting.  (Sept. Chen Decl. Ex. 3, p.6.)

Likewise, Bradken's citation to *Mitsubishi* is insufficient to put the specific issue of ESCO's

entitlement to fees before the arbitrator.  *Mitsubishi* stands for the proposition that international

arbitration agreements are enforceable with respect to antitrust claims.  *Mitsubishi Motors*, 473 U.S.

at 635-40.  *Mitsubishi* does not discuss or even mention a prohibition on attorneys fees awards to

successful antitrust defendants as Bradken now asserts.  Therefore, the court concludes that Bradken

has failed to establish that the arbitrator *actually knew* of the allegedly relevant, controlling legal

principle, and thus it cannot establish manifest disregard.  *Collins*, 505 F.3d at 884; *DiRussa*, 121

F.3d at 823.

Third, Bradken's contention that it could not have raised its argument concerning ESCO's

requested attorney fees prior to issuance of the final award is unconvincing.  Again, Bradken

identifies no legal authority for its proposition or how the arbitrator's actions demonstrate manifest

disregard.  Furthermore, Bradken's suggestion that the arbitrator would not entertain legal arguments

concerning attorney fees and costs prior to issuing the final award is undermined by the arbitration

record itself.  As the record indicates, the arbitrator inquired of the parties whether they wanted an

opportunity to comment upon each other's cost submissions.  (Sept. Chen Decl. Ex. 6, Apr. 29, 2010

email from arbitrator.)  Bradken declined to do so.  (Sept. Foster Decl. Ex. 28 ("Bradken likewise

does not wish to comment on ESCO's statement of costs.")  In short, Bradken offers no persuasive

explanation for why it could not present its current arguments prior to the final award and clearly

fails to establish manifest disregard on such a basis.[5]

Lastly, even assuming *arguendo* that it was inappropriate for the arbitrator to award attorneys fees to ESCO in light of U.S. antitrust law, at best, Bradken has established only that an "error of law" has been made. *Lagstein*, 607 F.3d at 641. Bradken has not established that "something more than a failure of the arbitrator to understand or apply the law" occurred in this instance. *Carter*, 374 F.3d at 838. The arbitrator's response to Bradken's request for clarification demonstrates that the arbitrator was unaware of Bradken's position on the award of attorney fees to ESCO and the record establishes that the parties agreed to be bound by the rules that included empowering the arbitrator to award attorney fees to the prevailing party. (Sept. Chen Dec. Ex. 3, p. 6.) Bradken certainly has not shown that the arbitrator understood the law, and then proceeded to disregard it.

In summary, Bradken has failed to establish his claim of manifest disregard because: (1) the governing law alleged to have been ignored is not well-defined, explicit, and clearly applicable; (2) the record does not indicate that the arbitrator was aware of or actually knew of the alleged prohibition on awarding attorney fees to successful antitrust defendants in an international arbitration setting; and (3) Bradken has not demonstrated that something more than an error of law occurred. For all of these reasons, Bradken's motion to vacate the arbitral award should be denied.

V.    <u>Waiver</u>

ESCO contends that Bradken has waived its ability to object to the award by failing to raise

---

[5]The court also rejects Bradken's contention that the arbitrator manifestly disregarded U.S. antitrust law when he awarded attorney fees according to Article 31 of the ICC – "the parties' choice of dispute resolution procedure." (Bradken's Memo. in Support, p. 14.) Bradken has not identified any law which prohibits an award of attorney fees where such an award is expressly anticipated by the parties' arbitration agreement negotiated at arms' length. In the absence of a well-defined, explicit governing law prohibiting such an award, the court cannot find that the arbitrator erred.

the public policy, manifest disregard, and fee segregation arguments during the arbitration. According to ESCO, Bradken's failure to timely raise its arguments with the arbitrator prevents it from raising those arguments in this proceeding. Bradken responds that U.S. antitrust law and public policy preclude a party from waiving the right implicated here. Additionally, Bradken asserts that it did not have an adequate opportunity to present its position prior to issuance of the final award, and therefore did not waive its current arguments. The court determines that even assuming *arguendo* that a public policy or governing law prevents an award of fees to ESCO, Bradken has waived those arguments by not raising them during the arbitration itself.

      A.     *Standards*

A party cannot assert challenges to confirmation of an arbitration award that were not raised during the arbitration. "[I]t is well settled that a party may not sit idle through an arbitration procedure and then collaterally attack that procedure on grounds not raised before the arbitrators when the result turns out to be adverse." *Marino v. Writers Guild of America, East, Inc.*, 992 F.2d 1480, 1484 (9th Cir. 1993), *cert. denied*, 510 U.S. 978 (1994); *accord Wellman v. Writers Guild of America, West., Inc.*, 146 F.3d 666, 673-74 (9th Cir. 1998)(determining that party waived discrimination and bad faith claims that could have been raised before arbitration board). This principle applies with equal force in the context of challenges to commercial and international arbitration awards. *See Todd Shipyards Corp. v. Cunard Line, Ltd.*, 943 F.2d 1056, 1063-64 (9th Cir. 2001)(finding party waived due process challenge to punitive damage award when it failed to raise objection during arbitration); *AAOT Foreign Economic Ass'n (VO) Technostroyexport v. International Development & Trade Servs., Inc,* 139 F.3d 980, 982 (2d Cir. 1998)(finding that party who had knowledge that some members of arbitration court were amenable to accepting bribes, but

28- FINDINGS AND RECOMMENDATION

did not raise issue during arbitration, waived ability to challenge confirmation of award on public policy basis).

      B.     *Analysis*

The court rejects Bradken's first contention that the issue of recovery of attorneys fees under 15 U.S.C. § 15(a) is so integral to U.S. antitrust law that it could not have prospectively waived the issue. This argument misses the mark. As discussed above, Bradken has identified no binding precedent prohibiting an award of fees in similar circumstances, and thus Bradken does not have an identifiable right to be free from an attorney fee award.

The cases upon which Bradken rests is waiver argument are distinguishable. For example, in *Graham Oil Co. v. ARCO Products Co.*, the Ninth Circuit agreed that there was nothing in the Petroleum Marketing Practices Act ("PMPA") which prohibited the arbitration of disputes. 43 F.3d 1244, 1247 (9th Cir. 1994), *cert. denied*, 516 U.S. 907 (1995). However, because the PMPA was enacted, in part, to shield franchisees from the gross disparity of bargaining power, the arbitration clauses which sought to prospectively waive the franchisee's rights to punitive damages, attorneys fees, and one-year statute of limitations were invalid. *Id.* at 1248. Unlike *Graham*, this case involves two sophisticated business entities who agreed to submit their disputes to arbitration, and Bradken has not challenged the general enforceability of its contract or its arbitration agreement with ESCO on grounds of unconscionableness or disparate bargaining power.

The decision in *Kristian v. Comcast Corp.* is similarly distinguishable. 446 F.3d 25, 44 (1st Cir. 2006). In *Kristian*, the First Circuit determined that the cable subscribers' statutory right to treble damages in 15 U.S.C. § 15(a) could not be waived. *Id.* at 48. However, *Kristian* involved an adhesion contract applicable to all subscribers, not an individually negotiated arbitration agreement.

29- FINDINGS AND RECOMMENDATION

*Id.* at 35.  More to the point, unlike *Kristian*, the arbitration agreement at issue in this case did not purport to prospectively waive any antitrust liability, treble damages, or entitlement to fees, and Bradken's argument to the contrary is not convincing.

More critically to the outcome here, the court determines that Bradken has waived its arguments concerning the award of attorney fees by failing to present them to the arbitrator.  Bradken had several opportunities to inform the arbitrator that ESCO's request for fees was limited by case law or public policy, but it refrained from so doing.  In total, ESCO points to six documents filed between August 5, 2008 and May 3, 2010 listing ESCO's request for relief in the form of attorney and expert fees.  (ESCO's Reply at 7.)  Bradken was first aware that ESCO requested relief in the form of "costs of arbitration, including attorney and expert fees" as early in the arbitration as August 5, 2008, when ESCO requested this additional relief in response to Bradken's antitrust counterclaims.  (July Foster Decl. Ex. 4 at 18.)  ESCO restated its request for relief in at least two pre-hearing memorials, as well as in the TOR.  Most significantly, ESCO's Third Memorial, filed on December 21, 2009, clearly and expressly put at issue the question of whether ESCO could recover its fees for defending against Bradken's counterclaims.  In the Memorial, ESCO expressly asserted that it was "entitled to an award of its reasonable attorney fees and costs incurred in pursuing its affirmative claims and *in defending against Bradken's counterclaims*."  (Sept. Foster Decl. Ex. 17 at 2 (emphasis added).)  ESCO then proceeded to argue why it was entitled to such an award, citing Article 31 of the ICC Rules as the appropriate authority and identifying Oregon law that is consistent with the ICC Rules.  Lastly, on May 3, 2010, Bradken received ESCO's statement of fees and costs, which included an explicit request that ESCO be awarded *all* of its attorney fees, a figure totaling approximately $8.8 million and undeniably including fees incurred in defending and

asserting all claims involved in the arbitration.

The record shows that Bradken had clear notice by December 21, 2009, well before the arbitration hearing began and seven months before the arbitrator issued his award, that ESCO's request for attorney fees included those fees incurred in defense of "Bradken's counterclaims."  On May 3, 2010, ESCO again made this express request for attorney fees incurred in defense of Bradken's antitrust counterclaims.  Bradken has pointed to no place in the record where it responded to ESCO's repeated requests attorney fees or to ESCO's arguments in its Third Memorial that the ICC Rules authorize such relief if ESCO were to prevail on Bradken's antitrust counterclaims. Bradken waived an opportunity to comment on the May 3, 2010 statement and remained silent during the five weeks that followed before the arbitrator issued the award.  Bradken never once argued or even mentioned during the arbitration that U.S. antitrust laws could limit ESCO's request for relief, nor did Bradken ask the arbitrator for additional briefing or time to respond to ESCO's statements.

Bradken replies that it did not respond to any of these notices because ESCO's requests for attorney fees were "generic" or "ambiguous."  (Bradken's Reply 2-3; Tr. 46.)  Bradken argues that, because ESCO never expressly stated that its request for attorneys' fees included those fees incurred in defense against Bradken's antitrust claims, it would be unreasonable for the court to now interpret the statements in this manner.  However, the language of ESCO's numerous requests for relief is broad enough to include all fees related to all claims, and ESCO never expressly limited its requests to fees relating to contract claims and counterclaims.  Further, and more pertinent to Bradken's precise premise, ESCO ultimately did link its attorney fee request to Bradken's antitrust counterclaims, and did so expressly.  Bradken could have and should have considered the

31- FINDINGS AND RECOMMENDATION

interpretation it now challenges as unreasonable and, instead of allowing ambiguous and overly broad requests to persist on the record, provided the arbitrator with the law it believed would have reined in ESCO's request.

Regardless, Bradken's interpretation arguments have traction, if at all, only until December 21, 2009, and are completely without merit after May 3, 2010. In neither instance did Bradken raise the issue with the arbitrator. In view of the extensive briefing by both parties during the arbitration, Bradken's demonstrated willingness to raise any issue with the arbitrator, and the apparent sophistication of counsel concerning antitrust issues, it is incongruous for Bradken to argue that it had no opportunity to raise or somehow was foreclosed from addressing this issue if it believed that the ICC rules did not give ESCO the right to fees that it claimed it had. The arbitration record includes eighteen Procedural Orders and numerous other lengthy filings – Bradken's Second and Third Memorials were each over 100 pages, and its responses to the arbitrator's list of issues totaled about 350 pages. Quite tellingly, Bradken did not just assume that the arbitrator already knew of its statutory right to trebled damages. Bradken thoroughly explained to the arbitrator the mandatary nature of the relief by repeatedly presenting the arbitrator with relevant case law and argument. If Bradken similarly understood ESCO's right to fees to be limited by U.S. law or policy it should have – and logically would have – also placed that case law in front of the arbitrator. Bradken's suggestion that it lacked the opportunity or ability to raise its concern about ESCO's right to fees before the arbitrator is simply unconvincing on this record.

Similarly untenable on this record is Bradken's argument that it was foreclosed from asserting its argument because the arbitrator had foreclosed the opportunity by requiring both parties to agree to a procedure for commenting on each other's fee statements. Bradken's email response

to the arbitrator's invitation stated "Bradken likewise does not wish to comment on ESCO's statement of costs." (Sept. Foster Decl. Ex. 28 at 1.)  Bradken's email followed only by minutes ESCO's email advising the arbitrator that "ESCO does not require an opportunity to comment on Bradken's statement of costs." (Sept. Foster Decl. Ex. 28 at 2.)  Bradken's email was immeidate, unequivocal, and unqualified.  Nowhere in its email did Bradken state or suggest that it wanted the ability to address ESCO's fee statement, notwithstanding ESCO's contrary desire; that ESCO's fee statement raised an important legal issue requiring further briefing; or that it felt unfairly constrained by the arbitrator's from addressing the unexpected content of ESCO's fee submission.  To the contrary, the Bradken's statement to the arbitrator conveys only confidence and certainty of its position on the issue, and allows no inference of concern such as that Bradken now asserts.

Bradken's argument that it did not have a sufficient opportunity to present its argument on attorneys fees is particularly untenable in light of its request to this court to segregate portions of the fees the arbitrator awarded to ESCO.  Bradken concedes that ESCO is entitled to some amount of attorneys fees as the prevailing party on the contract claims, and that the issue of cost allocation was properly before the arbitrator under Article 31.  (Tr. 64-66).  Notwithstanding, Bradken asserts that because the arbitrator could not award ESCO fees in defense of the antitrust counterclaims, this court must parse ESCO's attorneys cost submissions and exclude that time.  Bradken has waived this argument.

Bradken should have and could have made to the arbitrator, because the need to assert it at arbitration was clear as soon as Bradken asserted its antitrust counterclaims.  Bradken admitted during the arbitration, on September 18, 2009, that ESCO's contract claims and the antitrust counterclaims "present largely the same issues" and "flow from the same factual bases." (Sept.

Foster Decl. Ex. 21 at 2.)  Therefore, if ESCO prevailed at arbitration, then its attorney fee award would have required the arbitrator to make the distinction that Bradken now urges this court to make. It is true that Bradken could not know whether and the extent to which ESCO would prevail until the arbitrator issued his decision.  But many months before the award issued, Bradken certainly knew that Article 31 applied, that breach of contract and antitrust claims were being arbitrated together, that those claims factually and legally overlapped, and that ESCO had asked for attorney fees if it prevailed.

This fact having always been present in the arbitration, the need to distinguish between attorney time spent only on antitrust matters and time spent on all other matters also was always present.  Put another way, the accounting Bradken now commends as needed and urges this court to conduct is a task that Bradken knew during the arbitration proceeding the arbitrator would have needed to conduct if ESCO prevailed there.  Yet, Bradken never raised with the arbitrator the distinction between recoverable and non-recoverable attorney time, never requested an accounting of the type it now argues is necessary, and failed completely to bring to the arbitrator's attention that, should he find for ESCO, he would need to conduct a detailed review of ESCO's attorneys' time records to separate time for which fees were recoverable from time for which fees could not be awarded.  Against this factual reality, Bradken provides no explanation for its failure to raise this issue at any time during the arbitration proceeding or sustainable reason why it should be excused from having not addressed it despite the clear potential that the issue would arise.

For all these reasons, the court concludes that Bradken waived the public policy, manifest disregard, and fee segregation arguments it now asserts here.  Bradken should have raised these issues with the arbitrator, and because it did not, it has waived its ability to assert such challenges

in this proceeding. *Wellman*, 146 F.3d at 673; *Marino*, 992 F.2d at 1484. This court cannot

undertake tasks properly within the province of the arbitrator. To do so would undermine the utility

of settling disputes through arbitration. *See Todd Shipyards*, 943 F.2d at 64; *Technostroyexport*, 139

F.3d at 982.

V.    Confirmation of Award

Because Bradken has failed to demonstrate any ground for refusal pursuant to the

Convention, or any ground for vacatur under Chapter I of the FAA, confirmation of the arbitration

award is required. 9 U.S.C. § 207 (the court "shall confirm the award unless it finds one of the

grounds for refusal or deferral of recognition or enforcement of the award specified in the

[Convention.]"); *Bosack v. Soward*, 586 F.3d 1096, 1102 (9th Cir. 2009), *cert. denied*, 130 S. Ct.

1522 (2010)(noting that confirmation is required unless award vacated or modified as prescribed

under 9 U.S.C. §§ 10 or 11). Accordingly, the court recommends that the award be confirmed.[6]

VI.    ESCO's Request for Sanctions

ESCO seeks an award of sanctions against Bradken for Bradken's alleged bad faith and

frivolous challenge to the arbitrator's award pursuant to Federal Rule of Civil Procedure 11, 28

U.S.C. § 1927, and the court's inherent authority. According to ESCO, because Bradken's public

policy argument lacks legal support and its challenges to the award of attorney fees were waived, the

court should award as sanction ESCO's reasonable costs and attorneys fees in this action, and

prejudment and post-judgment interest at the Oregon statutory rate of nine percent.

---

[6]Bradken requests that the court separate fees incurred by ESCO solely in defense of
Bradken's antitrust claims from those relating to the remaining issues in the arbitration. In light of
the court's recommendation that the award be confirmed, and its conclusion that Bradken waived
the issue of segregation, this issue is moot.

35- FINDINGS AND RECOMMENDATION

A.      Standards

Under Rule 11, a court may impose sanctions against an attorney, law firm, or party when a complaint is filed for an improper purpose such as harassment or delay, when the claims in the complaint are unwarranted under either existing law or a nonfrivolous argument for extension of the law, or when the allegations in the complaint are without evidentiary support and unlikely to have evidentiary support after further investigation and discovery. FED. R. CIV. P. 11(b), (c). When evaluating whether a complaint is frivolous or without evidentiary support, the court "must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (internal quotation and citation omitted). As shorthand for this test, the Ninth Circuit uses the word "frivolous" "to denote a filing that is *both* baseless *and* made without a reasonable and competent inquiry." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc). "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988).

Section § 1927 does not apply to initial pleadings, but rather authorizes sanctions only for the multiplication of proceedings, and is therefore applicable only to unnecessary filings and tactics once a lawsuit has begun. *In re Keegan Mgmt. Co., Securities Litig.*, 78 F.3d 431, 434 (9th Cir. 1996) (internal citations omitted). To impose sanctions under § 1927, the court must make a finding of bad faith or recklessness. *Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Soules v. Kauaians for Nukolii Campaign Comm.*, 849

F.2d 1176, 1185-86 (9th Cir. 1988)(internal quotations and citation omitted).  Sanctions may also

be imposed based on a finding that an attorney "recklessly or intentionally misled the court."  *In re*

*Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010).  However, a non-frivolous filing may not be

sanctioned unless it was "intended to harass."  *In re Keegan Mgmt. Co.*, 78 F.3d at 436.

      A federal court may levy sanctions under its inherent power for willful disobedience of a

court order; when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive

reasons; or against counsel who willfully abuse judicial processes.  *Fink,* 239 F.3d at 991-92 (citing

*Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980)).  The inherent power "extends to a full

range of litigation abuses," but the litigant must have "engaged in bad faith or willful disobedience

of a court's order."  *Id*. at 992 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-47 (1991)); *accord*

*Mendez v. County of San Bernardino*, 540 F.3d 1109, 1132 (9th Cir. 2008); *In re Keegan*, 78 F.3d at

436.

      B.     *Analysis*

      ESCO's sanctions request is based on the allegation that since the award was issued

Bradken's actions have been contrived in bad faith for purposes of delay.  ESCO contends that

Bradken's arguments for vacatur are frivolous, that Bradken's representations to ESCO and to the

public of intent to pay the award in July of 2010 demonstrate bad faith, and that Bradken's requests

for extensions of time for filings in this court were not for good cause.  Because the evidence offered

to support these claims is insufficient to warrant sanctions, ESCO's request for sanctions should be

denied.

      First, ESCO has not demonstrated that Bradken's motion to vacate is frivolous.  Bradken's

arguments are neither "baseless" nor "made without a reasonable and competent inquiry."  Both of

37- FINDINGS AND RECOMMENDATION

Bradken's arguments for vacatur are grounded in valid federal law.  Bradken's challenge to the award is not with the substantive issues decided by the arbitrator but is narrowly focused on only the portion concerning cost allocation.  In addition, the general legal issue propounded by Bradken – that successful antitrust defendants may not be awarded fees under 15 U.S.C. § 15(a) – is supported by case law in this circuit and others.  Although the court has rejected Bradken's arguments and concluded that in a mutually agreed arbitration Bradken can agree to pay attorney fees, Bradken's motion to vacate is not factually or legally baseless.  Furthermore, none of the briefing to this court or in the arbitration cites to any binding precedent specifically resolving the question at issue here, demonstrating that the legal questions raised by Bradken are currently unsettled.  Bradken had an objectively reasonable basis for asserting its claims.

Second, ESCO presents only circumstantial evidence of Bradken's bad faith intent, which, without more, does not satisfy the rigorous standards for imposing sanctions.  ESCO suggests that the court infer from the size of Bradken's monetary obligation that its motion was filed for purposes of delaying payment or to harass.  However, this suggested inference is not compelled here, particularly given that the commercial dispute between the parties resulted in obligations to Bradken and caused monetary and business consequences to Bradken of a value many times greater than the fee award – a result which Bradken has not sought to avoid or delay.  Likewise, Bradken's representations that it intended to pay the award in July of 2010, and subsequent failure to do so, are not sufficient evidence to prove that Bradken's motion to vacate was filed with intent to harass.  Additionally, Bradken's representations in and of themselves, were not made to the court, and thus do not constitute sanctionable behavior.  And, Bradken's letters indicate an intent to comply with the portions of the award not at issue here, and ESCO provides no evidence that Bradken has been

uncooperative concerning these other issues or that it has not complied with those requirements. ESCO's circumstantial offerings are not enough to prove that Bradken has acted in bad faith.

Finally, ESCO has not demonstrated that Bradken's requests for extensions were not based on good cause. Bradken made three separate requests to extend time for reply to ESCO's petition until the arbitrator had responded to its request for clarification. At the time of the extension requests, the parties had not yet received the arbitrator's decision on the clarification request. Bradken expressed concern that the arbitrator's decision could affect its response to ESCO's motion to confirm. This rationale was reasonable, and ESCO has provided no evidence to prove the filings were motivated by any other reason. ESCO claims that since the arguments in Bradken's motion to vacate are duplicative of the arguments it presented in its request for clarification, no extension of time was actually needed, and the requests were made for purposes of delay. While Bradken's arguments in these two documents do indeed overlap, the court cannot infer from this that Bradken's intent was to harass, or that Bradken knew that the arbitrator's decision ultimately was irrelevant to its responsive briefing.

In sum, ESCO has not presented sufficient evidence for the court to award sanctions. Therefore, ESCO's motion for sanctions against Bradken should be denied.

VII.    Prejudgment and Post-Judgment Interest

A.    *Post-Award Prejudgment Interest*

ESCO requests that the court impose post-award prejudgment interest at the rate of nine percent, as determined under Oregon law, from June 17, 2010, until the date of judgment. Bradken opposes an award of prejudgment interest arguing that: (1) ESCO has not demonstrated prejudgment interest is proper, and (2) even if awarded, prejudgment interest should be assessed at the federal

39- FINDINGS AND RECOMMENDATION

rate, not the Oregon rate.

ESCO contends that a prevailing party in an international arbitration confirmation should be presumptively entitled to an award of post-award prejudgment interest.  ESCO also suggests that it is within the court's discretion to apply the Oregon rate, set forth in OR. REV. STAT. § 82.010, instead of the federal rate, set forth in 28 U.S.C. § 1961, where the court has federal question jurisdiction and diversity jurisdiction over the claims.  ESCO contends that because it prevailed in the arbitration on a number of state law contract claims, the prejudgment interest rate should be set by Oregon law because the parties' 1999 agreement and the TOR provide that Oregon law governs the parties' relationship.

The applicable rate of interest is governed by the court's jurisdiction.  "State law generally governs awards of prejudgment interest in diversity actions, but federal law may apply to the calculation of prejudgment interest when a substantive claim derives from federal law alone."  *Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co.*, 513 F.3d 949, 961 (9th Cir. 2008).  *In re the Exxon Valdez*, 484 F.3d 1098, 1101 (9th Cir. 2007)(determining that Alaska rate applied to prejudgment interest in diversity action).  Therefore, in cases that arise under federal law, the award of prejudgment interest is based on federal law.  *See also United States v. Pend Oreille Pub. Util. Dist. No. 1*, 28 F.3d 1544, 1553 (9th Cir. 1994), *cert. denied*, 514 U.S. 1015 (1995).

In the instant proceeding, the parties assert federal question jurisdiction.  ESCO invokes this court's federal question jurisdiction to confirm the arbitral award pursuant to the Convention, as codified in 9 U.S.C. §§ 201-208.  In its motion to vacate, Bradken asserts that the arbitrator's award was rendered in manifest disregard of *federal law* pursuant to Chapter I of the FAA, 9 U.S.C. § 10(a)(4).  Indeed, the Ninth Circuit has recognized, "it is not the presence of federal issues in an

40- FINDINGS AND RECOMMENDATION

underlying arbitration that determines whether federal question jurisdiction exists, but rather the grounds asserted for federal review in a well-pleaded petition." *Carter,* 374 F.3d at 836. Here, Bradken's claims of manifest disregard confer federal question subject matter jurisdiction. *Loung v. Circuit City Stores, Inc.*, 368 F.3d 1109, 1112 (9th Cir. 2004)("a claim of manifest disregard, unlike the grounds for vacatur specifically listed in § 10, so immerses the federal court in questions of federal law and their proper application that federal question subject matter jurisdiction is present." (internal quotations omitted)); *Greenburg v. Bear, Stearns & Co.*, 220 F.3d 22, 27 (2nd Cir. 2000), *cert. denied*, 531 U.S. 1075 (2001). Accordingly, because the parties assert federal question jurisdiction, the court finds that the federal rate in § 1961 would apply to ESCO's request for prejudgment interest.

The Ninth Circuit has not addressed whether a party that obtains confirmation of an international arbitration award may recover prejudgment interest, and the court observes that neither the Convention or the FAA speak to the issue. *See Industrial Risk Ins.*, 141 F.3d at 1446-47 ("no federal statute governs awards of prejudgment interest"). Accordingly, the court relies on the standard applicable to prejudgment interest generally: "Whether [prejudgment] interest will be awarded is a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities." *Wessel v. Buhler*, 437 F.2d 279, 284 (9th Cir. 1971); *USF Reddaway, Inc. v. Teamsters Union, Local 162 AFL-CIO*, 230 F. Supp. 2d 1180, 1182 (D. Or. 2001); *McCabe Hamilton & Renny Co., Ltd. v. International Longshore Warehouse Union, Local 142, AFL-CIO*, 557 F. Supp. 1171, 1188 (D. Haw. 2008). Prejudgment interest is to be thought of as "'an ingredient of full compensation that corrects judgments for the time value of money.'" *Donell v. Kowell*, 533 F.3d 762, 772 (9th Cir. 2008) (quoting *In re P.A. Bergner & Co.*, 140 F.3d 1111, 1123 (7th Cir.

1998)).  It is "a measure that 'serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress.'" *Schneider v. County of San Diego*, 285 F.3d 784, 789 (9th Cir. 2002) (quoting *West Virginia v. United States*, 479 U.S. 305, 311 n.2 (1987)). Prejudgment interest should not be awarded as a "penalty," *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 988 (9th Cir. 2001), or when it amounts to a "windfall recovery," *Knapp v. Ernst & Whinney*, 90 F.3d 1431, 1442 (9th Cir. 1996), *cert. denied*, 519 U.S. 1112 (1997).

In this case, the equities do not weigh in favor of awarding prejudgment interest.  Although Bradken's motion to vacate the award, as well as its several motions for extension of time, delayed enforcement of the award, the arguments it presented in its motion to vacate are not baseless or frivolous.  Bradken's arguments were colorable, and the solution was not immediately apparent. Merely because the motion to vacate was unsuccessful does not warrant the award of prejudgment interest.  *See Fred Meyer, Inc. v. Teamsters Local 206*, 463 F. Supp. 2d 1186, 1193 (D. Or. 2006)(declining to award prejudgment interest where motion to vacate was "not brought in bad faith" and the party "raised sound objections to the arbitrator's award"); *but see USF Reddaway*, 230 F.Supp2d at 1183 (ordering prejudgment interest, noting that "Reddaway has held the unpaid wages [for three years] and, presumably, has benefitted economically.")  To award interest here would discourage parties from asserting objectively reasonable grounds for vacatur and would punish Bradken for its use of the legal system.

Furthermore, ESCO will obtain the benefit of the parties' contractually agreed arbitration process with minimal delay in the context of the parties' relationship and on the record of this case. The parties' business relationship spans decades and this dispute arose only within the past several

years. ESCO filed its arbitration request in March 2008; the arbitrator's award issued in June 2010 and this court's ruling occurs barely six months thereafter. The minimal additional delay in obtaining confirmation, especially considering the significant and untested legal issue raised and resolved during that period, does not weigh in favor of post-award prejudgment interest.

For these equitable reasons, ESCO's request for post-award prejudgment interest be denied.

B.    *Post-Judgment Interest*

ESCO requests that post-judgment interest also be awarded at the rate of nine percent, instead of the rate specified under federal law, as a sanction against Bradken for dilatory tactics. The court disagrees.

The award of post-judgment interest in this case is governed by federal law and is not discretionary. *Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 289 (9th Cir. 1995); 25 U.S.C. § 1961. "A judgment confirming an arbitration award is treated similarly to any other federal judgment." *Fidelity Fed. Bank, FSB v. Durga Ma Corp.*, 387 F.3d 1021, 1023-24 (9th Cir. 2004)(citing 9 U.S.C. § 13). That is, "once an arbitration award is confirmed in federal court, the rate specified in § 1961 applies." *Id.* The purpose of § 1961 is to "ensure[] that the plaintiff is further compensated for being deprived of the monetary value of the loss from the date of ascertainment of damages until payment by defendant.'" *Northrop Corp. v. Triad Mktg. S.A.*, 842 F.2d 1154, 1156 (9th Cir. 1998)(quoting *Turner v. Japan Lines Ltd.*, 702 F.2d 752, 756 (9th Cir. 1983) (per curiam)(alteration in original)).

An exception to § 1961 exists "when the parties contractually agree to waive its application," *Fid. Fed. Bank*, 387 F.3d at 1023, such as when the parties agree in an arbitration or other agreement to a particular interest rate. *Citicorp Real Estate, Inc. v. Smith*, 155 F.3d 1097, 1108 (9th Cir. 1998).

43- FINDINGS AND RECOMMENDATION

However, a choice-of-law clause in the agreement underlying the dispute is not sufficient to constitute a waiver of § 1961 where the clause makes no reference to interest rates. *Fid. Fed. Bank*, 387 F.3d at 1024. Since the parties did not expressly agree to an interest rate in the 1999 agreement, no exception to § 1961 applies in this case. Post-judgment interest, at the rate determined by § 1961, should be awarded to ESCO.

In sum, ESCO's request for post-award prejudgment interest should be denied and ESCO's request for post-judgment interest should be granted, at the federal rate determined by § 1961.

### *Conclusion*

For the reasons stated above, ESCO's Petition for an Order To Confirm the Arbitration Award (CR #1) should be GRANTED; Bradken's Motion to Vacate in Part the Arbitration Award (CR #29) should be DENIED; ESCO's Motion for Imposition of Sanctions (CR #66) should be DENIED; ESCO's request for post-award prejudgment interest should be DENIED; ESCO's request for post-judgment interest should be GRANTED, applying the federal rate of interest determined by § 1961 from the date of this judgment until the date of full payment.

### *Scheduling Order*

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due **February 15, 2011.** If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and

////

////

44- FINDINGS AND RECOMMENDATION

Recommendation will go under advisement.

      DATED this 31st day of January, 2011.


                                     _____/s/ John V. Acosta_____
                                          JOHN V. ACOSTA
                              United States Magistrate Judge